[No. 4899–0–II.   Division Two.   May 6, 1982.]

THE STATE OF WASHINGTON, *Appellant,* v. ANGEL
HOFF, *Respondent.*

*Patrick D. Sutherland, Prosecuting Attorney,* and *Gary R. Tabor, Deputy,* for appellant.

*Jerome L. Buzzard,* for respondent.

WORSWICK, J.—How far may a trial court go in rescuing a defendant from an inept pro se defense? Not as far as the

court went in this case. On the State's appeal, we reverse an order granting a new trial.

On July 26, 1979, defendant pushed a fully clothed Craig Phelps into the swimming pool at the Aquarian Apartments in Tumwater. The next evening, Phelps, accompanied by Willie Durden, returned to defendant's apartment to secure an apology. An altercation ensued; Phelps hit defendant on the head with a beer mug and Phelps and Durden fled in their car with defendant in hot pursuit. Defendant chased them through two stoplights, sometimes at high speeds, and allegedly fired several shots at their car. Phelps and Durden sought refuge in the Thurston County Jail. Defendant was arrested later that day. No weapon was ever found.

On August 2, defendant was charged with second degree assault. He was represented by counsel at his preliminary appearance and arraignment, but on September 27, the court allowed defense counsel to withdraw after defendant stated that he wanted to represent himself. Defendant indicated that he had funds to hire a lawyer and that he understood he had a right to a lawyer.[1] An amended information adding the firearm allegation, RCW 9.41.025, was filed on October 8. The trial started on October 10 and on October 15, a jury found defendant guilty of second degree assault while armed with a firearm.

After the verdict, an attorney other than original defense counsel appeared and filed posttrial motions on defendant's behalf. Several continuances followed, apparently to allow counsel time to procure affidavits in support of the motions. Finally, on March 24, 1980, the motions were heard, with defendant once again being represented by his original pretrial defense attorney. A new trial was granted. The order was extensive and detailed but essentially it concluded that substantial justice had not been done because the defense

---

[1]Defendant made no contention in the trial court or here that the trial judge erred in allowing defendant to represent himself. The order granting a new trial expressly found that defendant was competent to waive counsel and did so knowingly and voluntarily.

was inept, a juror claimed to have been pressured into a verdict and there was an appearance of fairness problem because the trial judge had represented defendant's wife several years earlier. The order specifically stated that no prosecutorial misconduct occurred.

As to the inept defense issue, the State apparently contends that defendant's decision to represent himself precludes any consideration on appeal of his ineffectiveness at trial. On the other hand, defendant apparently contends that a pro se defendant should somehow be treated differently than one represented by counsel. He offers no proposed standards.

In order properly to focus on this issue, it is necessary first to consider the principles out of which the right of pro se defense arises. A defendant's right to represent himself is guaranteed by the sixth amendment to the United States Constitution and article 1, section 22, amendment 10 of our state constitution. *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975); *State v. Jessup,* 31 Wn. App. 304, 641 P.2d 1185 (1982). But unlike the right to the assistance of counsel, the right to dispense with such assistance and to represent oneself is guaranteed not because it is essential to a fair trial but because the defendant has the personal right to be a fool. *See State v. Fritz,* 21 Wn. App. 354, 359, 585 P.2d 173, 98 A.L.R.3d 1 (1978), quoting *People v. Salazar,* 74 Cal. App. 3d 875, 888, 141 Cal. Rptr. 753 (1977). A pro se defendant must bear the consequences of his or her own representation and cannot on appeal complain of the quality of the defense. *State v. Fritz,* 21 Wn. App. at 360.[2]

---

[2]We note here that the trial court remarked, in ruling on the motions, that on retrial defendant would be represented by counsel. This is an unfounded assumption. Defendant's right to a pro se defense cannot be abridged by the court. *State v. Jessup,* 31 Wn. App. 304, 641 P.2d 1185 (1982). We also note that a new trial should be granted only if the claimed error was prejudicial (*State v. Forbes,* 74 Wn.2d 420, 423, 445 P.2d 204 (1968)), *i.e.,* an error which, if eliminated, would change the result. *State v. Smith,* 72 Wn.2d 479, 484, 434 P.2d 5 (1967). Because defendant has the absolute right to represent himself again, we see no basis for assuming that he would not make the same or similar mistakes.

The rules of procedure apply equally to a defendant represented by counsel or appearing pro se. *Bonney Lake v. Delany,* 22 Wn. App. 193, 196, 588 P.2d 1203 (1978). Counsel cannot, in the trial of a case, remain silent as to claimed errors, and later, if the verdict is adverse, urge his trial objections for the first time in his motion for new trial or appeal (*Sherman v. Mobbs,* 55 Wn.2d 202, 207, 347 P.2d 189 (1959)); neither may a pro se defendant. In short, a pro se defendant is simply not entitled to special consideration.

Although the trial court ruled there had been no prosecutorial misconduct, defendant appears to argue there was, preferring to describe it as "over–reaching." He cites 26 examples, the most serious of which involved the admission into evidence of a hearsay statement by Willie Durden. The record plainly shows that it was defendant who insisted that the statement come in because he thought it supported his theory of the case; further, that he persisted even after the trial judge had a conference with him in chambers and offered him the opportunity to have it withdrawn. The prosecutor had little part in this. The other examples were essentially trivial events of the sort to be expected in a vigorously contested adversary proceeding. Defendant appears to suggest that a prosecutor, as an officer of the court, is obligated to alter his trial tactics when his adversary is a pro se defendant. We reject the notion that the prosecutor and trial court must abide by some special rules in these circumstances. One who knowingly, intelligently and voluntarily opts to represent himself is not entitled to three lawyers: The prosecutor, the court and himself. *United States v. Pinkey,* 548 F.2d 305, 311 (10th Cir. 1977); *Burstein v. United States,* 178 F.2d 665, 670 (9th Cir. 1949). On the other hand, if there is prosecutorial misconduct, a pro se defendant is entitled to the same relief he would be if represented by counsel. *See State v. Charlton,* 90 Wn.2d 657, 585 P.2d 142 (1978); *State v. Torres,* 16 Wn. App. 254, 554 P.2d 1069 (1976).

Defendant claims an accumulation of errors in this case similar to those in *State v. Swenson,* 62 Wn.2d 259, 382

P.2d 614 (1963); thus, he claims, a new trial is justified. We disagree. In *Swenson,* the Supreme Court reversed the trial court's denial of a motion for mistrial, primarily on the basis of defendant's inability to cross–examine the only witness implicating her in a murder plot. Repeated emotional and physical collapses by the witness precluded effective cross–examination. The errors warranting a mistrial were beyond the control of either the court or defense counsel. Here, if anyone can be blamed for the admission of evidence damaging to defendant, it is the defendant himself. His failure to object appropriately and his lack of knowledge of evidentiary rules are products of his decision to represent himself.

We can conceive of cases where an appellate court, on reviewing a whole trial record, could be so shocked by the proceedings as to conclude that the trial was a mockery and that a self–represented defendant should therefore be granted a new trial. This is not such a case.

■ The second reason for the order granting a new trial was a juror's affidavit stating that the juror was sick with a cold during deliberation and that other jurors exerted pressure on her to vote to convict the defendant. The effect of a juror's illness and the claimed pressure by others inheres in the verdict and may not be used to impeach the verdict. *State v. Forsyth,* 13 Wn. App. 133, 138, 533 P.2d 847 (1975). In a motion to set aside a verdict and grant a new trial, the verdict cannot be affected either favorably or unfavorably by the fact that one or more jurors assented because of weariness, illness or importunities. *Gardner v. Malone,* 60 Wn.2d 836, 841, 376 P.2d 651 (1962). Public policy forbids inquiries into the privacy of the jury's deliberations. *State v. Gay,* 82 Wash. 423, 439, 144 P. 711 (1914). The court should not have considered this affidavit.

■ The third reason for the order was a claimed appearance of fairness question that was brought to the attention of the court for the first time more than 3 months after the verdict. On January 19, 1980, defendant submitted an affidavit advising the court that 3 years earlier the

judge had represented defendant's wife in a dissolution proceeding. We specifically addressed the failure of a criminal defendant to raise an appearance of fairness argument until after trial in *State v. Bolton,* 23 Wn. App. 708, 598 P.2d 734 (1979), in which we stated:

> Obviously defendant was willing to take his chances, hope for a favorable decision and resort to the appearance of fairness argument only if he was unsuccessful. Clearly, in these circumstances defendant has waived any right to object to the qualifications of the judge or the fairness of the sentencing proceedings—whether actual or apparent—and cannot now raise such issue.

23 Wn. App. at 714–15. *See also In re Carpenter,* 21 Wn. App. 814, 820, 587 P.2d 588 (1978). Defendant relies on *Diimmel v. Campbell,* 68 Wn.2d 697, 414 P.2d 1022 (1966), in which the Supreme Court affirmed an order granting a new trial. In *Diimmel,* the trial judge's former law partner had written a letter expressing an opinion that corresponded to the judge's ruling in the case. The judge was made aware of the existence of the letter before the trial and of its contents after his ruling. The case is distinguishable. It involved a trial to the court which decided the case on the merits. This case was a trial by jury where the judge did not decide the merits of the case and was largely without discretion in sentencing because a mandatory minimum sentence is involved. The judge in *Diimmel* knew of the existence of the letter, but not its contents, before he made his ruling. In this case, the court was unaware of the prior representation until well after the trial. Defendant waived his right to make an appearance of fairness objection.

Finally, we recognize that a trial court's order granting a new trial should be reversed only for manifest abuse of discretion. *Diimmel v. Campbell, supra.* Such abuse occurs as a matter of law when there is no adequate legal basis for the order. *Mulka v. Keyes,* 41 Wn.2d 427, 441, 249 P.2d 972 (1952). Our review suggests to us that the trial judge was principally motivated by compassion in granting a new trial. Commendable as this most certainly was, it did

not suffice as a substitute for proper judicial discretion. Reversed.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied June 3, 1982.

Review denied by Supreme Court September 13, 1982.