[No. 29496-2-I.    Division One.    May 23, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. SHIRLEY YVONNE MILLER, *Appellant*.

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lynn S. Prunhuber, Deputy,* for respondent.

KENNEDY, J. — Shirley Yvonne Miller appeals her conviction of eight counts of first degree theft and one count of forgery, challenging the trial court's decisions relating to a civil contempt order and claiming that she was denied a speedy trial. Prior to trial, Miller was incarcerated for 14 months under an order of civil contempt for her failure to provide a handwriting exemplar to the prosecution. During this incarceration, the trial court tolled Miller's CrR 3.3 speedy trial rights. We conclude that it was proper for the trial court to order Miller to provide the handwriting exemplar, to apply a coercive contempt sanction when she failed to comply with that order, and to toll Miller's speedy trial rights under CrR 3.3 while she remained in contempt of court. Accordingly, we affirm.

## FACTS

On August 2, 1988, Miller was charged with eight counts of theft by deception in the first degree.[1] She pleaded not guilty at her arraignment on August 3. On August 18, 1988, at the first omnibus hearing, the court signed an agreed order requiring Miller to provide the State with a handwriting exemplar (the exemplar order). The omnibus hearing was continued for 2 weeks at Miller's request.

When the hearing resumed, Miller had yet to provide the handwriting exemplar. Defense counsel told the court that

---

[1]Miller told the members of a small religious congregation that she could help them acquire a church building in which to meet. She accepted money earmarked for a church building acquisition fund and appropriated it for her own use. She also helped some of the members acquire personal lines of credit, taking the money from these loans on the false pretense that it would be used to help acquire the church building.

he had informed Miller that she could not refuse to provide the exemplar because it was not incriminating in nature.[2] Miller explained that she had lost faith in her present attorney and that she wanted to have her attorney present when she provided the exemplar, and that her attorney had failed to appear at the jail at the agreed-upon time. She stated: "Your Honor, as soon as I get [another] attorney and really understand what is my rights, I will be glad to oblige the Court and do what you say, but I need a lawyer." Report of Proceedings (Sept. 1, 1988), at 7. The court recognized that Miller had lost faith in her attorney, but held that she had violated the court's directive that she provide a sample of her handwriting. The court allowed Miller to acquire a public defender, but held her in contempt, confined her to the county jail and tolled the operation of CrR 3.3 while she remained in contempt. Miller obtained new counsel on September 6, 1988, but did not provide the court-ordered handwriting exemplar. She remained confined for civil contempt.

More than 6 months later, on March 28, 1989, Miller moved to dismiss the charges, claiming that the trial court had no authority to toll her speedy trial rights during her confinement for civil contempt. Three days later, she also moved to vacate the contempt order, arguing that the contempt confinement had ceased being coercive and become punitive in nature. These motions were argued to Judge Tuai on April 11, 1989.

The court denied both motions. Judge Tuai believed that not tolling the operation of CrR 3.3 during Miller's civil contempt confinement would effectively eliminate the court's ability to use civil contempt to compel compliance with its criminal discovery orders. As to the motion to vacate the contempt order, the court asked whether Miller was going to comply with the exemplar order. Defense counsel replied:

---

[2]Handwriting exemplars are nontestimonial evidence, so are not subject to constitutional restrictions. *See State v. Stock*, 44 Wn. App. 467, 471-72, 722 P.2d 1330 (1986) (citing *Gilbert v. California*, 388 U.S. 263, 266-67, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967)).

Your Honor, that's not so clear. I think that's why Ms. Prunhuber [the prosecutor] has indicated it's never been totally clear.

. . . .

But [Miller's] position, as I understand it to this date, is that she would consider providing the exemplar, if and when she can have copies, and review that discovery to her satisfaction. That's my understanding of where we are on that question."[3]

Report of Proceedings (Apr. 11, 1989), at 32-33. The court stated that "the indications are that she is not going to comply", and held that the contempt order would remain in place until Miller complied. Report of Proceedings (Apr. 11, 1989), at 37.

The prosecutor, again noting that Miller had never clearly refused to comply with the court's order, asked the court to inquire once more as to whether Miller was going to provide an exemplar. The court asked if defense counsel were willing to have Miller answer this question, to which defense counsel replied: "I think I have answered [it], Your Honor, for Ms. Miller. I don't think there is any other answer to be given. We've discussed this matter." Report of Proceedings (Apr. 11, 1989), at 41. The court then instructed Miller that she would be released from jail as soon as she complied with the exemplar order.

On May 10, 1989, Miller filed a motion to vacate the exemplar order. Miller argued that the State had provided no justification for the exemplar at the original hearing. The State pointed out that the order had been agreed to by Miller, obviating the need for any demonstration of the State's need for the handwriting exemplar. The State also provided an affidavit stating that the documentary evidence collected by the prosecution required handwriting analysis. The affidavit states that some victims claimed that they did not fill out some of the documents used to acquire credit in their names, and some victims claimed that their signatures

---

[3]There had been a dispute as to whether Miller should have an unlimited opportunity to study the handwriting contained in the documentary evidence before producing the exemplar of her handwriting. Miller has not assigned error to the trial court's disposition of this dispute.

and checks were forged. In the affidavit, the prosecutor referred to a number of loan application forms, handwritten receipts and endorsements on checks that may have been written by Miller. The trial court denied Miller's motion to vacate the order, based on a finding that the exemplar order was agreed to by Miller, and based on the State's affidavit.[4]

The State requested a hearing be set in superior court for October 31, 1989, to determine if Miller intended ever to purge herself of contempt. At the hearing, the prosecutor stated that Miller's answers in the past were equivocal, and asked the court to "strongly" ask that Miller comply. The court again asked Miller if she were going to comply. Miller responded, through her attorney, that she never had agreed to comply, that she never had equivocated about that position and that she would not comply with the exemplar order. The prosecutor, noting that Miller had finally clearly taken a stand, suggested that the contempt sanction might not be coercive from that point forward.

Miller never provided the prosecution with the handwriting exemplar.

On November 13, 1989, the State filed an amended information adding six more first degree theft counts and a forgery count. That same day, the court set a trial date. The court's order stated that the time for speedy trial had been tolled for the entire period of Miller's contempt confinement, 14 months.[5]

On September 14, 1990, the State filed a second amended information adding one more count of first degree theft. The trial began on September 17, 1990. Miller was found guilty of 8 out of 15 theft counts and 1 forgery count. The jury could not reach a verdict on the remaining counts. Miller was sentenced to 72 months' incarceration (an exceptional

---

[4]Miller then sought discretionary review from this court. On October 6, 1989, a commissioner of this court declined discretionary review. Miller moved for modification of the commissioner's ruling, which motion was denied by a panel of this court on November 20, 1989.

[5]Additional delays occurring before and after the contempt confinement have not been challenged on appeal.

sentence), with credit for time served, including credit for the 14-month confinement for civil contempt. This timely appeal followed.

## DISCUSSION

■■■ The trial judge's decision to require Miller to supply a handwriting exemplar, his decision to apply contempt sanctions for her failure to do so and his decision to toll the speedy trial period while Miller remained in civil contempt are all reviewed for abuse of discretion. *See State v. Yates*, 111 Wn.2d 793, 797, 765 P.2d 291 (1988) (discovery decisions based on CrR 4.7 are within the sound discretion of the trial court); *In re King*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988) (whether contempt is warranted rests within trial court's discretion); *State v. Campbell*, 103 Wn.2d 1, 14, 691 P.2d 929 (1984) (trial court's grant or denial of continuance not disturbed absent manifest abuse of discretion), *cert. denied*, 471 U.S. 1094 (1985). The usual abuse of discretion standard of review applies. *See, e.g., State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *In re Marriage of Bralley*, 70 Wn. App. 646, 651, 855 P.2d 1174 (1993).

### I

### Decision To Order Exemplar; Denial of Motion
### To Vacate Exemplar Order

Miller argues that the trial court abused its discretion by holding her in contempt for not supplying a handwriting exemplar because the State provided no justification for requesting the exemplar. She further contends that the State did not need the exemplar, as witnesses could testify to seeing Miller write documents which were in the State's possession.

Miller's second argument stems from *In re King, supra.* In *King*, the court stated that incarceration as a contempt sanction should be applied only where there is no reasonable or effective alternative. *King*, 110 Wn.2d at 802. Miller argues that the State did not need the exemplar; therefore, there was a reasonable alternative to incarcerating her for not providing the exemplar, *i.e.*, to simply vacate the exemplar order.

CrR 4.7(b), as amended in 1986, governs criminal discovery and reads in relevant part:

> (2) Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, the court on motion of the prosecuting attorney or the defendant, may require or allow the defendant to:
>
> . . . .
>
> (vii) provide specimens of the defendant's handwriting[.]

■ The prosecution need only demonstrate a **reasonable** necessity for a handwriting exemplar, as opposed to an absolute necessity, in order to justify the trial court's ordering the exemplar. *See United States v. Askew*, 584 F.2d 960 (10th Cir. 1978), *cert. denied*, 439 U.S. 1132 (1979). In *Askew*, the defendant claimed a due process violation where the trial was postponed due to the government's delay in determining whether it could proceed without a handwriting exemplar. The court held that the exemplar would have been "highly relevant" and "useful", even if not "absolutely essential". This was a sufficient reason to demand the exemplar. *Askew*, 584 F.2d at 963. The case ultimately went to trial without the exemplar, prompting the court to add, "[T]he Government may well have concluded that it faced even greater risk from faded memories of witnesses if prosecution were to be delayed further." *Askew*, 584 F.2d at 963.

■ The exemplar order in this case was justified. Miller initially agreed to entry of the exemplar order and she thereafter assured the court that she would comply with the order after consulting with her new attorney. Furthermore, the prosecution supplied an affidavit establishing a reasonable necessity for the exemplar.[6] That some witnesses could testify that they saw Miller write some documents did not obviate the State's need for a known sample of Miller's handwriting, a sample that could not be challenged as possibly belonging to someone else during cross examination of the witnesses. Judge Tuai did not abuse his discretion in order-

---

[6]Miller argues that this affidavit came "too late" to be given consideration. She offers no authority for this position. Further, the affidavit arrived belatedly only because Miller had not previously questioned the validity of the initial order. Once this argument was raised, the prosecution timely provided the affidavit.

ing Miller to provide the exemplar, or in denying her later request that the order be vacated. Vacating a lawfully issued and reasonably necessary discovery order is not a reasonable alternative to incarceration for civil contempt, in an effort to enforce such order. To rule otherwise would frustrate the purpose of criminal discovery.

## II

### Civil Contempt Confinement

Miller argues that the trial court recognized or should have recognized, before the hearing of October 31, 1989, that Miller was not going to comply with the exemplar order, so that the contempt sanction had ceased being coercive.

In *In re King*, 110 Wn.2d at 802, the Supreme Court held that incarceration for civil contempt cannot last interminably: when a trial judge becomes certain that the contemnor will not purge himself of the contempt, the confinement ceases its coercive purpose and becomes punitive, obligating the court to release the contemnor. *King*, 110 Wn.2d at 802-03.[7] The current contempt statute codifies the *King* holding. *See* RCW 7.21.030(2)(a) (court has the authority to confine an individual who disobeys a court order for such time as that confinement serves a coercive purpose).

We reject Miller's assertion that the trial court recognized or should have recognized that the contempt sanction had lost its coercive nature before the hearing on October 31, 1989. At no time prior to the October 31, 1989, hearing did Miller definitively state that she would not comply with the order.[8]

---

[7]The contemnor must be given an opportunity, at regular intervals, to purge the contempt or to produce evidence that the confinement for contempt is no longer coercive. *King*, 110 Wn.2d at 805. Miller does not argue that she was denied this opportunity. Miller knew at all times that she would be released from jail the moment she complied with the court's order.

[8]Miller asserts that the trial court knew Miller was not going to comply when the trial court stated, on April 11, 1989, that "the indications are that she is not going to comply". Report of Proceedings (Apr. 11, 1989), at 37. However, at this hearing the court twice directly asked Miller or Miller's attorney if Miller was going to comply with the contempt order. Both times the court received an equivocal answer. In the context of the entire hearing, the trial judge's statement shows that he realized that Miller was not *yet* going to comply with the order.

■ ■ Under *King*, the mere passage of time does not convert the confinement to a punitive action. *King*, 110 Wn.2d at 803 (length of incarceration does not per se establish that further incarceration for contempt is unlawful, thus King's 11-month incarceration did not become punitive confinement as a matter of law). Even if Miller had earlier expressed unequivocally her refusal to comply with the exemplar order, the trial court would not have been bound thereby. *King*, 110 Wn.2d at 804. The judge could still have found that Miller might yet respond to continued incarceration. *King*, 110 Wn.2d at 804. The decision to continue to confine Miller in light of her equivocal statements was not an abuse of discretion.

■ The *King* court also stated that the trial court should consider the significance of the ends to be achieved when deciding whether to continue confining the contemnor. *King*, 110 Wn.2d at 805. In *King*, the contemnor refused to obey a court order to reveal the location of his juvenile son, whose physical safety was in doubt, claiming that to do so would violate King's Fifth Amendment right against self-incrimination. The trial court was directed, on remand, to determine the merits of the constitutional claim and to weigh King's liberty interests against the physical safety interests of King's minor son and against the court's own interest in enforcing its lawful orders. *King*, 110 Wn.2d at 805. Miller argues that the facts in *King* are distinguishable and that the State's interests in this case were outweighed by her liberty interests as a matter of law. We disagree.

The trial court's only means of enforcing its lawful discovery order was to confine Miller for civil contempt. Only when the judge was **certain** that Miller would never comply with the order was he required to terminate the confinement. Under the circumstance of this case, it was not an abuse of discretion for the trial court to conclude that Miller's liberty interests were outweighed by the State's interest in obtaining the handwriting exemplar in combination with the trial court's obligation to enforce its order. Judge Tuai did not abuse his discretion by maintaining the civil contempt sanction until October 31, 1989, when Miller, for the first time,

stated unequivocally that she would not comply with the exemplar order.

## III

### Contempt and Tolling Speedy Trial Calculation

Miller argues that the trial court had no authority to toll her CrR 3.3 speedy trial rights while she was in jail on the civil contempt order.[9]

CrR 3.3 excludes several periods from the calculation of a defendant's speedy trial rights:

(g) **Excluded Periods.** The following periods shall be excluded in computing the time for arraignment and the time for trial:

. . . .

(3) Delay granted by the court pursuant to section (h);

. . . .

(h) **Continuances.** Continuances or other delays may be granted as follows:

. . . .

(2) On motion of the State, the court or a party, the court may continue the cause *when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of the defense.* . . . The court must state on the record or in writing the reasons for the continuance.

(Italics ours.) Thus, a continuance granted pursuant to CrR 3.3(h)(2) must be both required by the administration of justice and not prejudicial to the presentation of the defense.

■ Because both the order requiring the handwriting exemplar and the order of contempt were valid, we hold that the continuance was "required in the administration of justice". CrR 3.3(h)(2); *see also State v. Bebb*, 44 Wn. App. 803, 813, 723 P.2d 512 (1986) (where Bebb refused to provide a

---

[9]Miller mixes an argument under CrR 3.3 with an analysis of constitutional speedy trial rights under *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). In *Barker*, the Court held that speedy trial rights must be analyzed on an ad hoc basis, as the constitution does not establish actual deadlines. *Barker*, at 530. CrR 3.3 establishes guidelines and rules for calculating speedy trial rights. Washington courts have applied *Barker* only in the context of defendants detained in other jurisdictions. *See, e.g., State v. Davis*, 69 Wn. App. 634, 637-38, 849 P.2d 1283 (1993) (CrR 3.3 does not include in the calculation of the speedy trial period any time spent incarcerated in another jurisdiction, but *Barker* may prevent the trial of a defendant arraigned in Washington and then incarcerated for many years in another jurisdiction before being returned to Washington to start trial).

handwriting exemplar, reviewing court found no abuse of discretion in ordering a continuance; the "continuance was needed because Bebb failed to obey a court order"), *aff'd*, 108 Wn.2d 515, 740 P.2d 829 (1987). Miller attempts to distinguish *Bebb*, pointing out that, in *Bebb*, the trial court granted a continuance to a specific date, as opposed to continuously tolling the speedy trial period. Just as in *Bebb*, however, the reason the delay occurred in this case was Miller's refusal to comply with the court's order. Judge Tuai could have granted one continuance after another, each to a date certain; however, this was unnecessary. Miller was well aware that she could purge herself of contempt at any time. We see no significant difference between the decision to grant a series of continuances each to a date certain or one continuance for an indefinite period which was terminable by Miller at any time.[10]

Miller also claims that she was prejudiced by the trial court's order of contempt in two ways: (1) the contempt confinement allowed the State enough time to do additional investigation and add to the information additional theft counts and a forgery count; and (2) even though she was given credit for the 14 months she served while in contempt of court, this time was spent in a county jail instead of a more suitable, long-term prison facility. Neither type of prejudice is "in the presentation of [her] defense" as contemplated by CrR 3.3(h)(2). The trial judge did not abuse his discretion by tolling Miller's CrR 3.3 speedy trial rights while she was lawfully incarcerated for civil contempt of court.

Affirmed.

After modification, further reconsideration denied June 9, 1994.

GROSSE and BAKER, JJ., concur.

---

[10]But see footnote 7.