[No. 45129-8-II.   Division Two.   July 14, 2015.]

THE STATE OF WASHINGTON, *Respondent*, v. TROY ALLEN FISHER, *Appellant*.

*John A. Hays*, for appellant.

*Anthony F. Golik, Prosecuting Attorney*, and *Anne M. Cruser, Deputy*, for respondent.

¶1 JOHANSON, C.J. — A trial court found Troy Fisher guilty of first degree murder for the shooting of his father, Edward Fisher. Troy[1] appeals his conviction and sentence. In the published portion of this opinion, we hold that the trial court did not abuse its discretion by declining to reappoint counsel after Troy waived his right to counsel and reasserted this right only after the State had rested its case. In the unpublished portion of this opinion, we hold that the State established the corpus delicti of the crime, that substantial evidence supports the trial court's finding that the murder was premeditated, and that the issues Troy raises in his statement of additional grounds are unavailing. Finally, we hold that the trial court's findings of fact do not support its conclusion that Troy displayed an egregious lack of remorse and, therefore, the trial court erred by imposing an exceptional sentence. Accordingly, we affirm the conviction, reverse the sentence, and remand to the trial court for resentencing.

---

[1] We refer to Edward and Troy Fisher by their first names for clarity, intending no disrespect.

## FACTS

¶2 The State charged Troy with first degree premeditated murder or, in the alternative, first degree felony murder with the predicate offense of first degree robbery. For the same incident, the State also charged Troy with one count of second degree murder. The State alleged four aggravating factors, including that Troy demonstrated an egregious lack of remorse in the commission of the offense, the only aggravating factor that is relevant to this appeal.

¶3 Initially, the State appointed Gregg Schile to represent Troy. Schile represented Troy for over a year, filing several motions in his defense. Nevertheless, Troy requested new counsel. The trial court then appointed Charles Buckley to represent Troy, but Troy became dissatisfied with Buckley's performance as well and demanded to represent himself.

¶4 The trial court conducted an extensive colloquy with Troy regarding his wish to represent himself.[2] In doing so, the trial court noted that no issue of mental competency had been raised. Notwithstanding the trial court's repeated warnings that self-representation was not wise, Troy insisted. The trial court granted Troy's motion, finding that he knowingly and voluntarily waived his right to counsel. The trial court appointed Buckley to serve as standby counsel, but it made it clear to Troy that standby counsel would be available to assist with only technical matters and would not represent him.

¶5 Buckley subsequently moved to withdraw as standby counsel because Troy filed a grievance against him with the Washington State Bar Association. The court permitted Buckley to withdraw and appointed Bob Yoseph to serve as standby counsel. Troy also waived his right to a jury trial.

---

[2] Troy does not allege that this *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), colloquy was insufficient on appeal.

¶6 During the ensuing bench trial, following the State's presentation of its case, the trial court asked Troy whether he would give an opening statement, which he had previously reserved. At that point, Troy explained to the court that he could no longer represent himself. He asked the court to have Yoseph assume responsibility for his defense. In response, the trial court expressed concern regarding whether such a decision would even be possible because Yoseph had been serving only a standby role. The trial court reminded Troy that although Yoseph had been adequately prepared to serve as standby counsel, Yoseph would be unable to conduct Troy's trial defense absent additional preparation. Yoseph agreed that he would not have been prepared to go forward because he had been advising on only technical matters.

¶7 After reminding Troy about the extensive colloquy that it held when he initially requested to represent himself, the trial court concluded that Troy's request to reappoint counsel was untimely. The trial court did, however, grant a short continuance over the State's objection so that Troy could consult with his standby counsel over a weekend.

¶8 When trial resumed, Yoseph moved for a mistrial over Troy's objection, urging the trial court to rule that Troy was both technically as well as mentally incapable of self-representation based on his (Yoseph's) interactions with Troy.[3] But the trial court refused to declare a mistrial and required Troy to proceed with his case. Troy called few witnesses and rested his case a short time later.

¶9 The trial court found Troy guilty of first degree murder under both of the two charged alternatives. The

---

[3] Yoseph also suggested, however, that the court should conduct some investigation into Troy's mental health generally. But Troy withdrew his claim that the trial court erred by failing to order a competency evaluation after standby counsel placed Troy's mental capacity in question. Wash. Court of Appeals oral argument, *State v. Fisher*, No. 45129-8-II (Mar. 30, 2015), at 0 min., 26 sec. through 0 min., 32 sec. (on file with court). Accordingly, references herein to Troy's mental health are related only to his ability to represent himself.

court also found Troy guilty of second degree murder, which it then merged for purposes of sentencing. Finally, the court determined that Troy acted with an egregious lack of remorse in the commission of the crime. Troy appeals.

## ANALYSIS

### REQUEST TO REAPPOINT COUNSEL

¶10 Troy argues that the trial court violated his constitutional right to counsel when it denied his motion to order standby counsel to take over the defense of his case. We hold that Troy's claim fails because the decision to reappoint counsel is wholly discretionary with the trial court and the trial court did not abuse its discretion in denying Troy's request for reappointment of counsel as untimely.

¶11 The United States and Washington Supreme Courts recognize a constitutional right of criminal defendants to waive assistance of counsel and to represent themselves at trial. *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). But once an unequivocal waiver of counsel has been made, the defendant may not later demand the assistance of counsel as a matter of right because reappointment is wholly within the discretion of the trial court. *State v. DeWeese*, 117 Wn.2d 369, 376-77, 816 P.2d 1 (1991).

¶12 Although not required under either the state or federal constitutions, a trial court may appoint standby counsel to aid a pro se defendant at the defendant's request. *State v. McDonald*, 143 Wn.2d 506, 511, 22 P.3d 791 (2001). Our Supreme Court "has defined standby counsel's role as not necessarily representing the defendant but as providing technical information." *McDonald*, 143 Wn.2d at 511; *see also State v. Bebb*, 108 Wn.2d 515, 525, 740 P.2d 829 (1987).

¶13 Here, Troy contends that because Yoseph admitted that he was not prepared to take over Troy's representation

at a moment's notice, he was therefore prejudiced because preparedness to assume responsibility for a defense is a prerequisite to serve as standby counsel. Troy argues that his "inability" to represent himself and his request for reappointment of counsel compels the conclusion that reappointment of counsel was necessary. Br. of Appellant at 27. In support of this proposition, Troy relies on two cases: *McDonald* and *Bebb*. But neither case is analogous to the facts here.

¶14 In *McDonald*, our Supreme Court framed the issue presented as whether an actual conflict of interest between standby counsel and a defendant merits an assumption of prejudice justifying reversal of the trial court's decision. 143 Wn.2d at 510. The *McDonald* court held that when the trial court knows or should know of a conflict of interest between the defendant and standby counsel, it must conduct an inquiry into the nature and extent of the conflict. 143 Wn.2d at 513. Failure to make such an inquiry and take appropriate action constitutes reversible error, and prejudice will be presumed. *McDonald*, 143 Wn.2d at 513. Here, there is no alleged conflict of interest between Troy and Yoseph; thus *McDonald* is inapposite.

¶15 Troy also relies on *Bebb* to support his argument. The issue in *Bebb* was whether the trial court's speculative statement that the attorney-client privilege did not apply to discussions between a pro se defendant and standby counsel ultimately compelled Bebb to relinquish his constitutional right to representation. 108 Wn.2d at 524. The court held that the record did not support Bebb's claims that the trial court's statement interfered with his standby counsel's legitimate functions and that Bebb was ably represented by counsel throughout the trial. *Bebb*, 108 Wn.2d at 526.

¶16 Nonetheless, *Bebb* is instructive concerning when it may be appropriate to reappoint standby counsel. In that case, there were lingering concerns regarding Bebb's mental competence to stand trial and to represent himself. *Bebb*, 108 Wn.2d at 519. Before his trial began, the court

directed Bebb's standby counsel to remain familiar with the case so that he could be prepared to take over in the event Bebb was no longer able to represent himself as he wished. *Bebb*, 108 Wn.2d at 518. The court thereby conveyed its sentiment that termination of Bebb's self-representation may indeed be *necessary* in that case. In fact, before trial began, Bebb requested that standby counsel be appointed as cocounsel, and Bebb "acquiesced entirely" to "able representation by appointed counsel" throughout trial. *Bebb*, 108 Wn.2d at 526.

¶17 Here, unlike *Bebb*, the trial court expressed no concern as to whether Troy had the mental capacity either to stand trial or to assert his right to self-representation. Accordingly, because those concerns were not present here as they were in *Bebb*, standby counsel was not instructed to be ready at a moment's notice to assume responsibility for Troy's defense. Thus, there was no indication that termination of Troy's self-representation was *necessary* here.

¶18 To the contrary, the trial court here refused to declare a mistrial based on the assertion that Troy was not technically or mentally able to represent himself, and the court agreed that standby counsel was appointed to render technical assistance only. Although there were certainly concerns about Troy's technical, legal efficacy, there were no concerns about Troy's mental capabilities. And although the trial court did mention its reservations regarding Yoseph's ability to represent Troy at such a late stage in the trial, the court's decision not to reappoint counsel rested primarily on the fact that trial was nearly over—not that Yoseph was incapable or unprepared—and, therefore, in the court's view, the motion was untimely.

¶19 Our decision in *State v. Canedo-Astorga*, 79 Wn. App. 518, 903 P.2d 500 (1995), offers an apt comparison. There, the trial court granted Canedo-Astorga's motion to represent himself, but designated his appointed attorney as standby counsel. *Canedo-Astorga*, 79 Wn. App. at 521-22. During the trial, Canedo-Astorga's codefendant moved for

the reappointment of Canedo-Astorga's standby counsel, asserting that it was " 'obvious by now [Canedo-Astorga] cannot adequately defend himself.' " *Canedo-Astorga*, 79 Wn. App. at 522. But Canedo-Astorga's standby counsel said that he had been serving only in a limited capacity and, therefore, was not prepared to try the case absent a continuance. *Canedo-Astorga*, 79 Wn. App. at 523.

¶20 We held that the trial court did not abuse its discretion by declining to reappoint Canedo-Astorga's standby counsel because the request was made in the midst of a trial and the only reason it was made was because of Canedo-Astorga's own ineptitude, which was the very reason the trial court originally tried to dissuade him from representing himself. *Canedo-Astorga*, 79 Wn. App. at 526. Canedo-Astorga also continued to have standby counsel to answer his questions. *Canedo-Astorga*, 79 Wn. App. at 526. In so holding, we said that "the request for reappointment should be granted absent reasons to deny. In some cases, however, there will be reasons to deny—for example, that the request comes on the eve of or *during trial*, and will delay or interrupt the trial if granted." *Canedo-Astorga*, 79 Wn. App. at 525 (emphasis added).

¶21 The facts here are similar. Troy knowingly and voluntarily moved to represent himself. After an extensive colloquy, the trial court granted his motion and appointed standby counsel. After the State presented its entire case and rested, Troy then requested reappointment of counsel due to his technical inability to represent himself. The trial court rejected Troy's motion as untimely. Accordingly, we hold that Troy had not established that reappointment of counsel was necessary and, therefore, the trial court did not abuse its discretion by denying Troy's untimely motion to reappoint standby counsel.[4]

---

[4] Without fully developing his argument, Troy suggests that standby counsel was also ineffective for failing to be prepared to take over his defense on a moment's notice. Because Troy fails to show that reappointment of counsel was necessary as we have explained, we reject this argument.

¶22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WORSWICK and MELNICK, JJ., concur.