IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>     v.<br><br>BOBBY DARNELL GWIN,<br><br>          Appellant. | No. 84297-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUNG, J. — At his trial for unlawful possession of a firearm in the first degree, felony harassment, and possession of heroin with intent to deliver, Bobby Gwin exercised his right to self-representation. The trial court denied his request for standby counsel, citing its blanket policy to deny such requests. Gwin contends the court's categorical denial of his request for standby counsel violated his right to represent himself under Washington Constitution article I, section 22.

Article I, section 22 provides a pro se defendant with the right to sufficient resources to prepare and present a meaningful defense. Article I, section 22 does not, however, require that those resources include standby counsel. That said, in determining what resources will enable a pro se defendant to prepare a meaningful defense in a particular case, the court must consider a defendant's requests, including a request for standby counsel, in light of all of the circumstances. Here, the trial court abused its discretion by failing to consider the request for standby counsel. However, the error was harmless as Gwin had sufficient resources to prepare and present a meaningful defense. We affirm

Gwin's convictions but reverse and remand to strike the Victim Penalty

Assessment (VPA) and correct a scrivener's error in the judgment and sentence.

FACTS

The State charged Bobby Gwin with unlawful possession of a firearm in

the first degree, possession of heroin with intent to deliver, and felony

harassment. Gwin sought to represent himself and asked the court to proceed

pro se with standby counsel. Prior to considering Gwin's request, the court

explained that it would not appoint standby counsel:

> I'm just going to tell you right now before we go into great detail,
> and I do a colloquy with you, if I grant your Motion to Proceed Pro
> Se, not going to give you standby Counsel. I'm not going to give
> you paralegal. I'm not going to, frankly, give you any type of legal
> assistance or an assistant to, uh, help you with your legal defense.
> And it's not just in your case, Mr. Gwin; I don't give that to any
> Defendant who wants to proceed pro se, and I'm very upfront about
> that.

The court asked if Gwin wanted to continue with his pro se motion, and Gwin

stated that he still wanted to exercise his constitutional right. The court reiterated,

"If I grant your Motion to Proceed Pro Se, I'm not going to give you standby

Counsel, legal assistant, any of that; do you still want to proceed?" Gwin

confirmed, "That's fine. Yes, sir. Yes, Your Honor. That's fine." The court

conducted a colloquy and determined that Gwin knowingly, intelligently, and

voluntarily waived his right to counsel. The court granted Gwin's motion to

represent himself, and Gwin completed a waiver of counsel.

Gwin opted for a bench trial, waiving his right to a jury. The court found

Gwin guilty of unlawful possession of a firearm in the first degree and felony

harassment. Gwin was acquitted of possession of heroin with intent to deliver.

2

Gwin received a low end standard range sentence of 57 months of incarceration. He appeals.

DISCUSSION

I.    <u>Right to Standby Counsel</u>

"The Sixth and Fourteenth Amendments of the United States Constitution afford a criminal defendant both the right to assistance of counsel and the right to reject that assistance and to represent himself." <u>State v. Silva</u>, 108 Wn. App. 536, 539, 31 P.3d 729 (2001). While both are guaranteed, "the right to proceed pro se and the right to assistance of counsel are mutually exclusive." <u>State v. Vermillion</u>, 66 Wn. App. 332, 340, 832 P.2d 95 (1992). "Self-representation is a grave undertaking, one not to be encouraged. Its consequences, which often work to the defendant's detriment, must nevertheless be borne by the defendant." <u>State v. DeWeese</u>, 117 Wn.2d 369, 379, 816 P.2d 1 (1991). The federal right to self-representation does not include a right to standby counsel or hybrid representation. <u>State v. Silva</u>, 107 Wn. App. 605, 622, 27 P.3d 663 (2001); <u>DeWeese</u>, 117 Wn.2d at 379.

Like its federal counterparts, article 1, section 22 of the Washington Constitution includes the dual rights of assistance of counsel and self-representation. <u>Silva</u>, 108 Wn. App. at 539. "[C]ourts must carefully balance the dissonant rights to counsel and to self-representation when a defendant seeks to proceed pro se." <u>State v. Rafay</u>, 167 Wn.2d 644, 652, 222 P.2d 86 (2009). Article I, section 22 affords "a pretrial detainee who has exercised his constitutional right to represent himself, a right of reasonable access to state provided resources

3

that will enable him to prepare a meaningful pro se defense." Silva, 107 Wn. App. at 622. The measures necessary for reasonable access are within the discretion of the trial court after consideration of circumstances such as the nature of the charge, complexity of the issues, the need for investigation, and the administration of justice. Id. at 622-23. "Although not required under either the state or federal constitutions, a trial court may appoint standby counsel to aid a pro se defendant at the defendant's request." State v. Fisher, 188 Wn. App. 924, 928, 355 P.3d 1188 (2015); see also State v. McDonald, 143 Wn.2d 506, 511, 22 P.3d 791 (2001). This court has explicitly stated that pro se defendants are "not constitutionally entitled to standby counsel." Silva, 107 Wn. App. at 625.

Despite this decisional authority on the right to standby counsel, Gwin contends the trial court's refusal to appoint standby counsel violated his rights under article I, section 22. According to Gwin, "Washington's state constitutional right to defend in person encompasses a right to standby counsel when necessary to afford an incarcerated defendant the ability to meaningfully access the courts and present his defense." Gwin is correct that under some circumstances, article I, section 22 provides greater protection than its federal counterpart. See Rafay,167 Wn.2d at 647 (while not recognized by federal law, article I, section 22 guarantees the right to self-representation on appeal). However, "just because a state constitutional provision has been subject to independent interpretation and found to be more protective in a particular context, it does not follow that greater protection is provided in all contexts." Murphy v. State, 115 Wn. App. 297, 311, 62 P.3d 533 (2003). Parties must

explain why greater protections are appropriate in specific applications. State v. Ramos, 187 Wn.2d 420, 454, 387 P.3d 650 (2017).

On review, we interpret a constitutional provision de novo. In re Pers. Restraint of Sargent, 1 Wn.3d 580, 587, 530 P.3d 566 (2023). To determine whether the Washington constitution extends broader rights in a particular context we consider the six factors established in State v. Gunwall: "(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." 106 Wn.2d 54, 58, 720 P.2d 808 (1986).

In Silva, this court considered the Gunwall factors to assess whether article I, section 22 guarantees broader assistance than the federal constitution to pro se defendants to prepare a defense. 107 Wn. App. at 617-21. That Gunwall analysis resulted in the conclusion that Washington's constitution encompasses the right to reasonable access to state-provided resources to enable preparation of a meaningful pro se defense, but also noted that the defendant was not constitutionally entitled to standby counsel. Silva, 107 Wn. App. at 622, 625.

Thus, while Silva established that article I, section 22 requires interpretation of the right to self-representation independent from the federal constitution, "[t]hat is only half the required analysis." State v. Lee, 12 Wn. App. 2d 378, 391 n.4, 460 P.3d 701 (2020). Gwin must explain why that independent interpretation leads to a constitutional entitlement to standby counsel. See Lee, 112 Wn. App. 2d at 391 n.4.

5

A. Textual Language and Differences in the Texts

The text of article I, section 22 states, "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel . . . ." The inclusion of the words "in person" has been interpreted as "unequivocally guaranteeing an accused the constitutional right to represent himself." Silva, 107 Wn. App. at 617-18. The Sixth Amendment lacks the same explicit language: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . and to have the Assistance of Counsel for his defense." Therefore, the federal right to self-representation is implied rather than express. Id. at 618. Because the right of self-representation in the Washington Constitution is explicit, "the differences in the text of the constitutional provisions have great significance in determining what is required to effectuate those rights." Id. at 618.

According to Gwin, the texts and their differences "weigh in favor of a finding that the state constitutional right includes a right to the assistance of standby counsel to effectuate the right to appear and defend in person." Indeed, Silva noted that because the right under the Sixth Amendment is implied and a matter of interpretation, "it is not immune from further interpretation and modification," whereas the right under the Washington Constitution is "clear and explicit." 107 Wn. App. at 618. Thus, "the differences in the text of the constitutional provisions have great significance in determining what is required to effectuate those rights." Id. at 619. However, Gwin does not provide any analysis as to why the textual differences point to a broader right under article I, section 22 that encompasses, specifically, the right to standby counsel.

B. State Constitutional and Common Law History

Gwin argues that state constitutional history weighs in favor of independent interpretation "because the framers of the Washington [C]onstitution chose to copy the declaration of rights from the constitutions of other states rather than from the federal Bill of Rights." As Silva stated, the decision to use constitutional language from other states "indicates the framers did not consider the language of the U.S. Constitution to adequately state the extent of the rights meant to be protected by the Washington Constitution." 107 Wn. App. at 619. Silva also considered state common law history, stating, "Washington courts have stated in passing that a pro se pretrial detainee does have a continued right of access to the courts after declining the assistance of counsel." Id. Pro se defendants must also have reasonable access to legal materials. Id. at 620. This common law history demonstrates that the right to self-representation guaranteed by the state constitution "is a substantive right, not a mere formality." Id. That right "cannot be satisfied unless it is made meaningful by providing the accused the resources necessary to prepare an adequate pro se defense." Id. at 621.

Gwin points to this same history discussed in Silva as indicating that "at a minimum, the Washington [C]onstitution guarantees the right to standby counsel when necessary to meaningfully effectuate the pro se litigant's right of access to the courts and the right to meaningfully prepare his defense." This access to resources necessary for a meaningful defense is precisely the right described in Silva, yet the court explicitly declined to extend this right to require standby

7

counsel.[1] 107 Wn. App. at 625 ("Silva is not constitutionally entitled to standby counsel," so his refusal to conduct interviews without counsel was "not justified"). Instead, "[w]hat measures are necessary or appropriate to constitute reasonable access lie within the sound discretion of the trial court after consideration of all the circumstances . . . ." Silva, 107 Wn. App. at 622 -23. These resources may include, but do not require, standby counsel. Fisher, 188 Wn. App. at 928. Gwin does not explain how history compels a different interpretation resulting in a constitutional entitlement specifically to standby counsel.

### C. Pre-existing State Law, Structural Differences, and State Interest

The last three Gunwall factors are straightforward. Gwin acknowledges that pre-existing state law has not been considered helpful in assessing the right to self-representation in Washington. See Silva, 107 Wn. App. at 621. The State notes that Washington has codified the right to waive counsel in RCW 10.73.150

---

[1] Silva is the most recent published case to consider a pro se defendant's entitlement to resources and assistance under the Washington Constitution. A recent unpublished case from this court, State v. Johnson, No. 84181-5-I (Wash. Ct. App. Jan. 29, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/841815.pdf, held that the right to standby counsel is not required under either the federal or state constitution:

> Although not required under either the state or federal constitutions, a trial court may appoint standby counsel to aid a pro se defendant at the defendant's request. State v. McDonald, 143 Wn.2d 506, 511, 22 P.3d 791 (2001). Our Supreme Court "has defined standby counsel's role as not necessarily representing the defendant but as providing technical information." Id. There is no absolute right of pro se litigants to standby counsel or "hybrid representation" whereby defendants may serve as co-counsel with their attorneys. State v. DeWeese, 117 Wn.2d 369, 379, 816 P.2d 1 (1991).

Slip op. at 10-12. However, neither McDonald nor DeWeese addressed the specific issue of standby counsel under article I, § 22. McDonald discusses the Sixth Amendment right to self-representation and states the court may appoint standby counsel over a defendant's objection. 143 Wn.2d at 511. Likewise, DeWeese discussed the Sixth Amendment, rather than the Washington Constitution. 117 Wn.2d at 379.

and RCW 10.77.020, but has not similarly enacted a statute to provide standby counsel.

The State acknowledges that the difference in structure between the state and federal constitutions "favors an independent state interpretation in every Gunwall analysis." State v. Russell, 125 Wn.2d 24, 61, 882 P.2d 747 (1994). Additionally, the exercise of a defendant's state constitutional right to self-representation is "plainly of state interest and local concern." Silva, 107 Wn. App. at 621.

D. Conclusion on Independent State Constitutional Analysis of Right to Standby Counsel

We have previously established that article I, section 22 guarantees a right of reasonable access to resources that will enable a pro se litigant to prepare a meaningful defense. Silva, 107 Wn. App. at 622. Those resources—including standby counsel—are at the discretion of the trial court. Silva, 107 Wn. App. at 622-23.

However, Gwin provides no argument as to why the broader reach of the right to self-representation and the resources to conduct a meaningful defense under article I, section 22 necessarily includes a specific entitlement to standby counsel. We decline to extend the right to meaningful resources to prepare and present a defense beyond the right as defined in Silva.

II. Trial Court's Consideration of the Request for Standby Counsel

Gwin claims the trial court abused its discretion by failing to meaningfully consider his request for standby counsel. The State concedes the trial court's

blanket refusal to appoint standby counsel was a failure to properly exercise its discretion, but claims any error was harmless. We agree.

The measures necessary to provide a pro se defendant reasonable access to state provided resources are within the sound discretion of the trial court. Silva, 107 Wn. App. at 622-23. This includes access to standby counsel. "[T]he trial court is not obliged to appoint, or reappoint, counsel on the demand of the defendant. The matter is wholly within the trial court's discretion." DeWeese, 117 Wn.2d at 379. However, when a defendant requests standby counsel, "the trial court must exercise its discretion in considering the request." State v. Davis, 6 Wn. App. 2d 43, 52, 429 P.3d 534 (2018), rev'd on other grounds by State v. Davis, 195 Wn.2d 571, 461 P.3d 1204 (2020). The trial court has discretion to determine what measures are necessary to constitute reasonable access "after consideration of all the circumstances, including, but not limited to, the nature of the charge, the complexity of the issues involved, the need for investigative services, the orderly administration of justice, the fair allocation of judicial resources (i.e., an accused is not entitled to greater resources than he would otherwise receive if he were represented by appointed counsel), legitimate safety and security concerns, and the conduct of the accused." Silva, 107 Wn. App. at 623. We review a decision to deny standby counsel for abuse of discretion. Davis, 6 Wn. App. 2d at 52. A trial court's failure to exercise discretion is an abuse of discretion. State v. Stearman, 187 Wn. App. 257, 265, 348 P.3d 394 (2015).

Here, the trial court refused to consider whether standby counsel should be appointed in Gwin's case, rejecting Gwin's request for standby counsel based on its blanket policy to deny assistance for any pro se defendant. The court did not exercise discretion to consider Gwin's request in the context of his case and circumstances. Thus, the court abused its discretion.

Because there is no constitutional right to standby counsel, the court's failure to consider Gwin's request is not of constitutional magnitude and is subject to analysis under the nonconstitutional harmless error standard. State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015). "Under this nonconstitutional harmless error standard, 'an accused cannot avail himself of error as a ground for reversal unless it has been prejudicial.' " Barry, 183 Wn.2d at 303 (quoting State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)). An error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. Barry, 183 Wn.2d at 303.

Gwin claims the failure to appoint standby counsel likely affected the outcome of his trial because the record includes several instances in which his "status as an incarcerated pro se party prevented him from preparing and presenting his defense in ways that could easily have been avoided if he had the assistance of standby counsel." Specifically, Gwin points to his difficulties subpoenaing and impeaching witnesses.

Gwin had difficulty confirming his witnesses due to changes to the trial date. Several of his subpoenas were returned as undeliverable. Gwin argues that

standby counsel could have assisted with coordinating witnesses. However, Gwin had the assistance of an investigator, and the court instructed Gwin to have the investigator serve the witnesses. At some point, Gwin was without an investigator and the court provided him with blank subpoenas and offered to mail them.[2] Gwin was concerned that one witness was "ducking" his subpoena, and he wanted to know how to compel the witness to appear. While standby counsel could have provided technical expertise, the record is unclear as to the witness and possible testimony.[3] Therefore, Gwin does not show that inability to compel the witness to testify resulted in prejudice.

As for impeachment of witnesses, Gwin wanted to admit prior convictions to impeach the victim's credibility. Gwin could not produce certified copies of the relevant docket, and the court refused to admit the exhibits. The court explained that Gwin needed certified public documents and allowed Gwin to submit certified copies if he could obtain them before the end of the trial. Gwin contends that "[s]tandby counsel could have assisted him in obtaining certified copies or at least explained this requirement so that Gwin could have done so." But the trial court itself explained the rules and allowed Gwin time to obtain the documents. Further, the record shows that Gwin had introduced certified copies of another public document as part of his defense, demonstrating that he knew how to obtain such documents. Moreover, the victim did not testify at Gwin's trial. The trial court admitted her 911 call, which it found "was compelling and had the ring

---

[2] Gwin appears to have fired two investigators.
[3] Gwin mentions Mr. Edmond Redmond, who appears to be a defense investigator rather than the witness. Gwin does not provide a name for the witness.

of truth." The court reasoned, "The 911 call is credible as Ms. Hunter was afraid for her life and needed to call for help. The call was the product of someone terrified and looking for help, not the call of someone who was angry and hoping to get someone in trouble." Evidence of prior convictions would not have altered the court's assessment of her credibility in the emergency circumstance.

Gwin also sought to impeach one of the detectives with an inconsistent statement made during a defense interview. However, the record is unclear as to the statement at issue. Gwin cannot show that assistance of standby counsel would have resulted in the admission of the impeachment evidence and altered the outcome of the trial.

Under article I, section 22, this court has considered access to legal materials, pencil and paper, copying services, coordination of services such as arranging interviews, blank subpoena forms, postage, and opportunity to interview witnesses to be among the reasonable tools necessary to prepare a pro se defense. Silva, 107 Wn. App. at 625-26.

The record demonstrates that Gwin had access to similar resources. He had use of a laptop loaded with electronic discovery prior to trial as well as a laptop for use in court. He had access to the jail's law library for legal research. The court assisted in mailing subpoenas. Additionally, Gwin had the assistance of an investigator to serve subpoenas, interview witnesses, and research factual issues. He received public funding for DNA and fingerprint analysis and independent experts. Moreover, Gwin wrote and filed multiple motions with citations to legal authority and argument. He was ultimately acquitted on one of

13

the counts. Gwin was able to prepare and present a meaningful, and partially successful, defense with the resources provided.

While standby counsel may have improved contact with defense witnesses and led to more success in impeaching State witnesses, Gwin has not demonstrated that the outcome of the trial would have been materially affected. Thus, the trial court's failure to meaningfully consider Gwin's request for standby counsel was harmless error.

III.     Correction of the Judgment and Sentence

The court imposed the required VPA but waived all other legal financial obligations. While this case was pending on appeal, the legislature enacted RCW 7.68.035(4), which prohibits the court from imposing the VPA "if the court finds that the defendant, at the time of sentencing, is indigent." Amendments to cost statutes apply prospectively to cases still pending on appeal. See State v. Wemhoff, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022).

At sentencing, the State conceded that Gwin was indigent. The State agrees that RCW 7.68.035(4) applies and the VPA is now an unauthorized legal financial obligation. We remand to strike the VPA from Gwin's judgment and sentence.

The parties also agree that the judgment and sentence contains a scrivener's error. The judgment and sentence states that Gwin was convicted by a jury verdict, but Gwin waived his right to a jury and was convicted by bench trial. The remedy for a scrivener's error is remand to the trial court for correction. State v. Sullivan, 3 Wn. App. 2d 376, 381, 415 P.3d 1261 (2018).

We affirm the convictions. We reverse and remand to strike the VPA from Gwin's sentence, as well as to correct the scrivener's error.

_Cheung, J._

WE CONCUR:

_Díaz, J._

_Dwyer, J._